Loetta CANNON, on behalf of herself and all others similarly situated, Plaintiff,

v.

**CHERRY HILL TOYOTA, INC., Defendant.**

No. CIV. 97–3722(JBS).

United States District Court, D. New Jersey.

Aug. 29, 2001.

Lawrence Lindsay, Loughry & Lindsay, LLC, Camden, NJ, and Lisa Rodriguez, Donna Siegel Moffa, Rodriguez & Richards, LLC, Haddonfield, NJ, and Charles

Riley, Riley & Sandilos, Cherry Hill, NJ, Attorneys for Plaintiff.

Jeffrey Sotland, Mintzer, Sarowitz, Zeris & Ledva, Philadelphia, PA, and Michael Baldassare, George A. Kelman, McElroy, Deutsch & Mulvaney, Morristown, NJ, Attorneys for Defendant.

### *OPINION*

SIMANDLE, District Judge:

This class action consumer fraud case is before the Court on the parties' cross-motions for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiff Loetta Cannon ("Cannon"), on behalf of herself and all others similarly situated, has sued the defendant car dealership, Cherry Hill Toyota, Inc. ("Cherry Hill") alleging violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. §§ 56:8–2 *et seq.* The gravamen of plaintiff's complaint is that Cherry Hill violated TILA and the NJCFA because it made material misrepresentations on form contracts used in connection with the sale of extended automobile warranties, stating that the entire charge for the warranty was paid to others when in fact Cherry Hill Toyota retained a substantial portion for itself as profit or commission.

Cherry Hill has filed the present motion for partial summary judgment seeking dismissal of Counts One and Two, or in the alternative striking plaintiff's demand for actual damages under TILA in Count One and treble damages under the NJCFA in Counts Two and Three of the Complaint. Plaintiff's motion for partial summary judgment conversely seeks judgment in her favor on Counts One and Two.

The main issue for decision in the present cross-motions is whether plaintiff must show detrimental reliance on the offending contract as a prerequisite to recovery under either TILA or NJCFA, or both. More specifically, now that all discovery in the case has concluded, the Court must determine whether there is any evidence of actual damages under TILA, or of "ascertainable loss" under NJCFA, caused by these violations. For reasons now discussed, this Court finds that the plaintiff must make a showing of detrimental reliance in order to obtain "actual damages" under TILA, and must make a similar showing of "ascertainable loss" in order to obtain any damages under NJCFA. As explained in further detail below, plaintiff fails to create a genuine dispute as to whether she suffered actual or ascertainable damages, and the Court will enter partial summary judgment in defendant's favor on Counts One and Two. However, although plaintiff is not entitled to actual or ascertainable damages in this case, defendant's conduct nonetheless violated TILA and NJCFA, and thus plaintiff is entitled to recover statutory damages under TILA and attorneys' fees, as explained below.

### *PROCEDURAL HISTORY*

In order to set the present motions in context, a brief summary of the procedural history of this case follows. On July 29, 1997, Cannon filed a three-count class action complaint against Cherry Hill asserting violation of TILA (Count One), and the NJCFA (Counts Two and Three). On October 7, 1997 plaintiff amended her complaint to assert a new claim under TILA. On October 14, 1997, Cherry Hill filed a motion for partial summary judgment seeking dismissal of Counts One and Two. By Order dated May 11, 1998 the Court struck plaintiff's Amended Complaint and denied Cherry Hill's motion to dismiss Counts One and Two.

This Court certified the *Cannon* class by Order dated March 26, 1999. *Cannon*

*v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540 (D.N.J.1999). Defendant filed a motion for reconsideration on April 6, 1999, and the Court temporarily stayed its March 26 Order. On June 3, 1999 defendant filed an additional motion seeking a declaratory judgment that plaintiff's NJCFA claims are preempted by TILA. The Court denied the reconsideration and declaratory judgment motions on July 26, 1999.[1] Defendant appealed, and by Order dated September 1, 1999 this Court denied defendant's motion to stay the proceedings pending appeal. The Third Circuit subsequently dismissed defendant's appeal for lack of jurisdiction on January 19, 2000.

### FACTS

As the Court has noted in a published Opinion in this case, plaintiff's complaint stems from her on July 30, 1996 purchase of a used automobile from Cherry Hill Toyota. *Cannon,* 184 F.R.D. at 542. In addition to the vehicle, Cannon purchased, through defendant, an optional mechanical breakdown protection ("MBP") package from Interstate, Inc. Cannon financed the entire transaction through Cherry Hill Toyota. The transaction was memorialized in a retail sales installment contract, which reflects a charge of $1,167.21 for the MBP in a contract section entitled "Amounts Paid to Others on Your Behalf." *Id.*

On July 29, 1997, Cannon commenced this action by filing a putative Class Action Complaint. Cannon alleges that Cherry Hill's representation in the "Amounts Paid to Others" section was false and misleading because Cherry Hill retained a portion of that amount for itself without disclosing

to Cannon that it was doing so. Cannon further alleges that Cherry Hill routinely makes false and misleading representations to consumers about the amount of money it pays to third parties for MBP on consumers' behalf because Cherry Hill consistently retains a portion of the price while affirmatively misrepresenting and failing to disclose the true distribution of those funds. *Id.*

Cannon maintains that Cherry Hill's failure to disclose that it was adding a mark-up or "upcharge" to the actual cost of the service warranty, and that defendant's affirmative misrepresentation of the amount actually paid to Interstate on the retail sales installment contract, as to which she financed the entire amount, violates the Truth in Lending Act ("TILA") (Count One), and the New Jersey Consumer Fraud Act ("NJCFA") (Count Two). Cannon also claims that Cherry Hill violated the NJCFA by affirmatively representing to her that the vehicle she bought had front wheel drive when it in fact had rear-wheel drive (Count Three). *Id.* (Count Three is not a subject of these motions.)

It is important to bear in mind that the present cross-motions pertain only to plaintiff Cannon's individual claims, but may have some bearing on her suitability to act as class representative for approximately 2,300 individuals with claims similar to hers. Within this scope the Court turns to consider the present cross-motions.

### DISCUSSION

A. *Summary Judgment Standard*

The standard for granting summary judgment is a stringent one. A court may

---

1. The Order of July 26, 1999 also amended the class definition to state as follows:
 All consumers who purchased since July 1991 a service contract or extended warranty from Cherry Hill Toyota in connection with the purchase of a vehicle which was documented in a form retail installment agreement that did not reveal that Cherry Hill Toyota would retain a portion of the amount paid for the service contract or extended warranty.

grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996); *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–330 (3d Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer*, 72 F.3d at 330 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. *Weissman v. United States Postal Service*, 19 F.Supp.2d 254 (D.N.J.1998). When ruling on cross-motions for summary judgment, the court must consider the motions independently, *Williams v. Philadelphia Hous. Auth.*, 834 F.Supp. 794, 797 (E.D.Pa.1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994), and view the evidence on each motion in the light most favorable to the party opposing the motion, *see Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

B. *TILA Claim*

Plaintiff's Count One states a claim under the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). TILA requires the lender or creditor, this case Cherry Hill Toyota, to provide "a written itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor [the dealer here] on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). The amount to be paid to Interstate on Cannon's behalf is not stated correctly in the written itemization of the amount financed that Cannon received. It is true that the consumer is not entitled to the statement unless he makes a written request for it, § 1638(a)(2)(B); 12 C.F.R. § 226.18(c)(2), and there is no indication that Cannon did. But the creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked

for it. 12 C.F.R. Pt. 226, Supp. I § 18(c)(1). That appears to be what happened in this case. Cherry Hill furnished the itemization, and the itemization contains a false representation. Namely, the itemization failed to disclose that Cherry Hill retained a portion of the warranty price, and that the amount paid to "third person" is therefore actually much less than the stated amount.

This Court noted in the context of class certification that there do not appear to be any questions of law or fact in this case other than the precise measure of damages suffered by each individual class member. *Cannon,* 184 F.R.D. at 546. Using the form contracts described above, Cherry Hill sold extended warranties on credit to an estimated 2,300 individuals during the relevant time period. Because these form contracts failed to inform the consumers that Cherry Hill would retain a portion of the warranty price, at first glance this would seem to be an open and shut case, the only question being the proper measure of damages.

Despite the clarity of the issues for decision here, defendant attempts to muddy the waters by asserting arguments that this Court has already rejected. Specifically, defendant argues that it is not liable under TILA because it is entitled to a "good faith defense." Section 1640(f) of the Truth in Lending Act provides a good faith defense to acts done or omissions made in "good faith conformity with any interpretation or approval by an official or employer of the Federal Reserve System...." 15 U.S.C. § 1640(f).

Defendant maintains that it is entitled to a good faith defense under § 1640(f) because it had reasonable grounds to believe that its duty to inform consumers of its profits on warranties was "permissive not mandatory" under a reasonable interpretation of then-prevailing FRB commentary

at 12 C.F.R. § 226.18 (Comment 226.18(c)(iii)(2)). (*See* Def. Reply Br. at 2–4, and Letter of Nancy McDonald, Esq., dated July 27, 2001.) This Court has already adopted Seventh Circuit Chief Judge Richard Posner's characterization of this very argument as "preposterous" in the factually similar case of *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283, 285–86 (7th Cir.1997). (July 26, 1999 Op. at 21–22.) As Judge Posner observed:

> The commentary (a part of the Federal Reserve Board's Regulation Z) addresses the situation in which the creditor retains a portion of the fee charged to a customer for a service provided by a third party, such as an extended warranty. It provides that "the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).'" 12 C.F.R. Pt. 226, Supp. I § 18(c)(1)(iii)(2). The commentary, being limited to the case in which the fee "is payable in the same amount in comparable cash and credit transactions," *id.,* has no bearing on the claim that the dealers in these cases are hiding a finance charge. But as to the other possible violation, the failure to itemize accurately, the defendants contend that the words "may" and "could" show that they can if they want disclose that they are retaining some of the fee, but that they are not required to do so. In other words, they read the commentary to say: "You may conceal the fact that you are pocketing part of the fee that is ostensibly for a third party, but if you are a commercial saint and would prefer to tell the truth, you may do that too." So interpreted, however, the commentary not only would be preposterous; it

would contradict the statute. *The only sensible reading of the commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention.* Even this is a considerable stretch of the statute; and it is as far as, if not farther than, the statute will stretch.

*Id.* (emphasis added).

■ This Opinion will mark the second time the Court has specifically rejected defendant's "good faith" argument. In the Court's Opinion on Defendant's Motion for Reconsideration of the Class Certification Order, I clearly rejected defendant's "permissive not mandatory" position: "the 'good faith' defense of § 1640(f) is not available to Cherry Hill Toyota under these circumstances." (July 26, 1999 Op. at 23.) This conclusion has not changed. In the future, defendant is advised not to submit arguments that have already been disposed of, there having been no intervening change of facts or law.

■ Having determined that defendant is not protected by a good faith defense, the Court next turns to the issue of whether defendant is liable as a matter of law under TILA. It is undisputed that defendant retained a portion of the amounts charged for service contracts. (*See* Horton Aff., Pl.Ex. F; Pl. Mat. Facts ¶¶ 6–9.) Further, defendant misrepresented that the "Amounts Paid to Others on Your Behalf" for the MBP was $1,167.21, when in fact it retained an undisclosed substantial markup for itself. Further it is beyond dispute that defendant used the same or substantially similar form contracts when it transacted with each of the class members, none of which made the required disclosure. (*See id.* and Horton Aff. B–D.) As no material facts remain in dispute concerning defendant's use of form contracts that withheld relevant information

from consumers and violated the TILA statute, the Court finds as a matter of law that defendant is liable to plaintiff for violation of TILA at 15 U.S.C. § 1638(a)(2)(B)(iii), *supra.*

The next question is whether plaintiff is entitled to damages upon her TILA claim. The *Cannon* class has requested actual damages equal to the total amount of "upcharges" retained by Cherry Hill Toyota, which plaintiff calculates to be $1,546,524.70. (Pl. Mat. Facts ¶¶ 10–14.) The provision governing actual damages reads:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to . . . (1) any actual damages sustained by such person as a result of the failure.

15 U.S.C. § 1640(a)(1).

In addition to allowing for actual damages, TILA provides three other remedies. First, TILA authorizes the Federal Trade Commission as its overall enforcement agency, 15 U.S.C. § 1607(c), and confers upon other federal agencies enforcement power over specific categories of lenders. 15 U.S.C. § 1607(a). Under this provision, the enforcing agency is required to adjust the consumer's account to eliminate any unjust finance charges. 15 U.S.C. § 1607(e)(1). Second, TILA imposes criminal liability on persons who knowingly and willingly violate the statute. 15 U.S.C. § 1611. Finally, TILA creates a private cause of action for statutory damages in favor of an individual, which may be assessed in addition to any actual damages. 15 U.S.C. § 1640(a)(2)(A)("twice the amount of any finance charge in connection with the transaction"). For class action suits arising out of the same TILA violation, Congress has placed a ceiling on

statutory damages of the lesser of $500,000 or 1% of the defendant's net worth. 15 U.S.C. § 1640(a)(2)(B). As the Eleventh Circuit en banc recently observed, "[u]nder this regime statutory damages provide at least a partial remedy for all material TILA violations; however, actual damages ensure that consumers who have suffered actual harm due to a lender's faulty disclosures can be fully compensated." *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir.2001) (en banc) (overruling *Ransom v. S & S Food Center, Inc. of Florida*, 700 F.2d 670, 677 (11th Cir.1983)).

In order to recover actual damages, plaintiff must establish that she relied to her detriment on the inaccurate disclosure. Although the Third Circuit has not addressed the issue, the majority of courts to have considered the issue have held that detrimental reliance is an element in a TILA claim for actual damages. *See id.* 242 F.3d at 1026; *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436–40 (5th Cir.2000); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000); *Peters v. Jim Lupient Oldsmobile*, 220 F.3d 915, 917 (8th Cir.2000); *Bizier v. Globe Financial Services, Inc.*, 654 F.2d 1, 4 (1st Cir. 1981) (dicta); *Vickers v. Home Fed. Sav. & Loan Assoc.*, 62 A.D.2d 1171, 404 N.Y.S.2d 201, 202 (1978). *But see Lopez v. Orlor*, 176 F.R.D. 35, 40 (D.Conn.1997); *Sutliff v. County Sav. & Loan Co.*, 533 F.Supp. 1307, 1313 (N.D.Ohio 1982); *In re Russell*, 72 B.R. 855, 857 (Bankr.E.D.Pa.1987).

The statute provides that a plaintiff is entitled only to "any actual damages sustained ... as a result" of a TILA violation. The plain meaning of the "sustained as a result" is that, in order to recover actual damages, the plaintiff must establish a causal relationship between the fraud and the loss. In addition to the plain meaning, the legislative history of the Act supports this reading:

Section 130(a) of TILA allows a consumer to recover both actual and statutory damages in connection with TILA violations. Congress provided for statutory damages because actual damages in most cases would be nonexistent or extremely difficult to prove. To recover actual damages, consumers must show that they relied on an inaccurate or incomplete disclosure.

141 Cong. Rec. H9513, H9516, 104th Cong., 1st Sess. (Sept. 27, 1995) (Stmt. of Mr. McCollum) (co-author of legislation).

As the legislative history emphasizes, the Act requires the more burdensome showing of detrimental reliance in actions for actual damages. In order to elucidate the parties' burdens in the context of proving damages "sustained as a result" of the TILA violation, the Eighth Circuit has crafted a framework which requires that the plaintiff show: "(1) that she read the TILA disclosure statement; (2) that she understood the charges being disclosed; (3) had the disclosure statement been accurate, she would have sought a lower price; and (4) she would have obtained a lower price." *Peters*, 220 F.3d at 917. This Court will follow this sensible approach.

 Applying the *Peters* framework to this case, the Court finds that plaintiff has failed to provide evidence from which a reasonable jury could conclude that she relied to her detriment on Cherry Hill's disclosure statement. Plaintiff testified that she read the Retail Installment Contract before signing it, (Cannon Dep. at 28), that she read the box concerning the MBP before buying it (*id.* at 29), and that she understood at that time that the contract identified the cost of the MBP as $1,157.00 (*id.*). Plaintiff thus satisfies the first and second prongs of the *Peters* test. Plaintiff has failed, however, to adduce any evidence that, if Cherry Hill's retained commission had been disclosed, she would

have sought a lower price on the warranty or that she would have succeeded in finding a lower price.

Plaintiff chiefly relies upon the report of her expert, automobile industry consultant David Stivers, as support for her reliance theory. Mr. Stivers opines that by failing to disclose that it profited from the sale of warranties, Cherry Hill deprived Ms. Cannon of opportunity to negotiate a lower price:

> Listing a false destination of extended warranty (service contract) premium, while suppressing the fact that the dealership is marking up the price for its profit, deprives consumers' ability to negotiate the price, by not revealing that it is negotiable. A false impression is thereby imparted: that extended warranty (service contract) prices are set exclusively by the individual warranty (service contract) company, which demands (and collects) this full amount of money as a warranty premium. Contrary to this false impression, Cherry Hill Toyota, Inc. marks up above its basic costs and sets these higher prices to the consumer(s), according to whatever the market will bear.

(Stivers Report at 6, Lindsay Aff. Ex. B.)

Even assuming that Mr. Stivers's report supports plaintiff's argument that Ms. Cannon might have gotten a better deal if Cherry Hill had been more forthright, this expert report creates—at best—merely a logical path suggesting that the true disclosures might make price bargaining more likely to occur. This is insufficient to give rise to an inference that Ms. Cannon herself would have sought and obtained a lower price. The evidence of record instead tends to show that Ms. Cannon would not have shopped for a cheaper warranty if she had known about Cherry Hill's profits. In fact, Ms. Cannon's own testimony undermines any logical inference that she would have searched for or gotten a better price had she realized that Cherry Hill profited from MBP sales:

> Q. Before you saw your attorney, did you have any problem with the extended warranty?
>
> A. No.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q. Okay. Besides what your lawyer told you, why do you believe you were charged the wrong amount?
>
> A. I have no idea.
>
> Q. Were you charged the wrong amount for the purchase price of the vehicle?
>
> A. I have no idea.

(Cannon Dep. at 35–36.) As this testimony shows, other than advice of counsel, Ms. Cannon had no basis for believing that she paid too much for the warranty, which belies her position that she would have negotiated a lower price had she known about the upcharge. Her testimony also fails to indicate that she would have *obtained* a better price:

> Q. What is wrong with the amount they charged you?
>
> A. I believe that's not the right amount.
>
> Q. Why not?
>
> A. It just seems awful high to charge someone that amount of price for a warranty.
>
> Q. Is that what they told you it was going to cost?
>
> A. Yes.
>
> Q. Did you agree to that price?
>
> A. Yes.

(*Id.* at 40.)

> Q. Besides the fact that you think the cost of the extended warranty is high, why else do you believe that you were cheated?

A. Are you just talking about the warranty?

Q. Yes.

A. Just by me going over it. Just by me looking at it. It just seems like a higher price to me.

Q. Besides that, is there any other reason why you believe you were cheated?

A. No.

Q. And you agreed to that price when you signed the contract?

A. Yes.

(*Id.* at 42.)

Q. What is wrong about the price?

A. It's too much.

Q. Why?

A. To my knowledge, I think its too much.

Q. When you say it's too much, too much compared to what?

A. I'm not sure.

Q. So you have nothing to compare that to as to why it would be too much; is that true?

A. Just by me going over the paperwork, and I just believe it was too much.

\* \* \* \* \* \*

Q. So do you believe that you have received a benefit from the warranty?

A. Yes.

Q. Taking that into consideration, what is it about that price that you think is too much?

A. It just seems too high to me.

(*Id.* at 45–46.)

As the testimony above shows, there is no indication whatsoever that Ms. Cannon would have sought or found a less expensive warranty plan if she had known about the upcharge. Plaintiff's expert's report does not contend that plaintiff would have negotiated for and obtained a lower price from Cherry Hill or any other dealer.[2]

2. Plaintiff's expert, David Stivers, has opined that a wide variety of extended warranty programs are available at competitive prices. He has stated:

Consumers would act differently if they were advised of this secret markup. This conclusion is supported by the fact that there is a wide variety of extended warranty (service contract) programs available, from numerous such underwriters. For decades, consumers have been able to purchase these programs (e.g. Geico) at competitive prices during a time period after the purchase of their automobiles. Competition in prices, as well as variation in coverage (time and mileage allowed), would induce people to comparison shop ... if they knew it was a negotiable item. Imparting this false one-choice impression described in the previous paragraph, Cherry Hill Toyota, Inc. management has eliminated this negotiation and deprived consumers of their right to negotiate.

(Stivers Report at 6, Lindsay Aff. Ex. B.) Mr. Stivers then suggests that damages suffered by consumers who financed at the dealership and purchased an extended warranty are measured by the "commission amount (dealer's secret markup)" and the accrued interest. *Id.* Mr. Stivers gives no support for the notion that an automobile dealer who sells an extended service contract of a third-party vendor is entitled to no consideration or markup for its efforts. In the present case, TILA permits actual damages to be measured by the availability of a better price only if the consumer establishes that she would have bargained for and received more favorable terms if the required financing disclosure had been made. TILA does not require vendors to advise borrowers of the availability of better prices elsewhere, whether on the vehicle or the extended service contract. That better prices on such extended service contracts were available elsewhere is thus necessary but not sufficient to plaintiff's proof of actual damages. Moreover, an extended service contract, obtained and financed with the purchase of the vehicle, is what plaintiff sought, and post-purchase warranties or service contracts are nothing she has indicated she would have considered, and are thus irrelevant to her claimed damages.

Moreover, Ms. Cannon's "feeling" that the warranty was too expensive is not based on comparison shopping, or any knowledge of comparative pricing, and there is no indication in the record that she either knew or (with disclosure of the upcharge) would have known that a less expensive alternative was available.

In sum, plaintiff's own testimony contradicts any suggestion that she relied to her detriment on Cherry Hill's incomplete disclosure. Mere speculation as to what Ms. Cannon *might* have done does not create a triable issue that she relied to her detriment on the incomplete warranty disclosure and suffered quantifiable damages thereby. Plaintiff thus has failed her burden of marshaling facts and reasonable inferences from which a jury could find that (1) she *would* have sought a cheaper warranty, and (2) that she *would* have succeeded in such a quest. The Court finds that plaintiff has failed to satisfy the third and fourth prongs of the *Peters* test, and concludes that plaintiff has failed to create a triable issue that she suffered actual damages on account of Cherry Hill's TILA violation. Accordingly, the Court will enter summary judgment against plaintiff's claims for actual damages under TILA.

■ Although plaintiff is unable to prove actual damages under TILA, she has proved entitlement to statutory damages arising from this same TILA violation pursuant to 15 U.S.C. § 1640(a)(2)(A)(for individual claim) and 1640(a)(2)(B)(for class claim). Plaintiff in this TILA case "need not prove that [s]he suffered actual monetary damages in order to recover statutory damages and attorney's fees," *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir.1996), *cert. denied*, 520 U.S. 1252, 117 S.Ct. 2411, 138 L.Ed.2d 177 (1997).

Plaintiff's TILA claim will be set for trial to determine the proper measure of individual and class-based statutory damages to be awarded.[3] It will be especially appropriate to award statutory damages where, as in plaintiff's case, actual quantifiable damages are not susceptible of proof. *See, e.g., Gambardella v. G. Fox & Co.*, 716 F.2d 104 (2d Cir.1983); *Brown v. Marquette Sav. & Loan Ass'n*, 686 F.2d 608 (7th Cir.1982); *Davis v. Werne*, 673 F.2d 866 (5th Cir.1982); *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641 (8th Cir.1980); *Postow v. OBA Federal Sav. & Loan Ass'n*, 627 F.2d 1370(D.C.Cir.1980); *Hinkle v. Rock Springs Nat. Bank*, 538 F.2d 295 (10th Cir.1976).

### C. NJCFA Claim

Plaintiff's Count Two alleges that Cherry Hill's conduct violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1 to 8–97 ("NJCFA"). The parties have cross-moved for summary judgment on this Count as well.

NJCFA provides a private cause of action in favor of:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act.... In any action under this section the court shall, in addition to any other appropriate legal

---

**3.** As to plaintiff's individual claim, statutory damages of twice the amount of any finance charge in connection with the transaction are available under 15 U.S.C. § 1640(a)(2)(A)(i), *supra.* As noted above, statutory damages under TILA for class action suits arising out of the same TILA violation have a ceiling of the lesser of $500,000 or 1% of the defendant's net worth, 15 U.S.C. § 1640(a)(2)(B). If the parties are unable to agree to the statutory damages for this class, the matter will be tried shortly.

or equitable relief, award threefold damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. 56:8–19. The Act provides, *inter alia,* that it shall be an unlawful practice for an automobile dealer to "fail to disclose, prior to sale, the existence and terms of any written warranty, service contract, or repair insurance offered by the dealer in connection with the sale of a used motor vehicle." N.J.S.A. 56:8–67.

■ Cherry Hill's failure to correctly disclose its profits on the MBP, by instead indicating the entire amount was paid to Interstate, is a facial violation of section 56:8–67. The Court finds that Cherry Hill Toyota is liable to plaintiff for violating N.J.S.A. 56:8–67(g) by failing to disclose the existence of a material term of the service contract, namely, that the actual cost of the MBP to Cherry Hill was a substantially lesser amount than the figure that the contract stated was being paid to Interstate on plaintiff's behalf, with the difference in price going to Cherry Hill as profit upon the sale of the service contract. Instead, Cherry Hill falsely disclosed that the entire amount charged for the extended service contract was being paid over to a third party—Interstate—when in fact a substantial amount was retained by Cherry Hill as a commission and profit in the undisclosed upcharge. Cherry Hill's failure to disclose the true price of the service contract—the amount actually remitted to Interstate—is as a matter of law a violation of the NJCFA, N.J.S.A. 56:8–67, for failure to disclose a material term of the service contract, namely, its actual price.

However, simply showing a violation of NJCFA is not enough to entitle a plaintiff to damages under that Act. It is important to note that the NJCFA does not provide for recovery of statutory damages where a plaintiff cannot show actual harm. In TILA, the statutory damages provision allows damages even without a showing of loss caused by the illegal conduct. *See* 15 U.S.C. § 1640(a)(2)(A). Unlike TILA, however, NJCFA requires that, in order to recover *any* damages, a plaintiff must show that she has suffered an ascertainable loss *as a result of* the defendant's unlawful commercial practice. *See* N.J.S.A. 56:8–19.

The Court has already determined that plaintiff has failed to create a triable issue that she relied to her detriment on Cherry Hill's incomplete warranty disclosure. Because this determination applies with equal force to plaintiff's NJCFA claim, the question becomes whether plaintiff may establish that she suffered an "ascertainable loss" despite having failed to show detrimental reliance.

Plaintiff argues that "ascertainable loss" under NJCFA is a broader concept that "actual damages" under TILA. (*See* Pl. Opp'n Br. at 11–12.) Whereas the statutory damages provision allows TILA to deter wrongful conduct even without a showing detrimental reliance, plaintiff argues that the NJCFA would lose its deterrent effect if merchants had no risk of liability unless the consumer could establish actual harm. As the Court understands plaintiff's argument, all plaintiff must do in order to recover damages under the NJCFA is show that there was an offensive commercial practice, that the plaintiff suffered a loss, and that there is a nexus between the two.[4]

---

4. Plaintiff asserts that the proper measure of damages under this theory is the entire upcharge—the amount of the MBP price re-

tained by defendant. Plaintiff argues that she and each class member agreed to pay the third-party's price for the MBP, and in fact

Although the law in this area is not completely settled, this Court will not adopt plaintiff's overly broad interpretation of what constitutes an ascertainable loss under NJCFA. Based on the plain meaning of the statute and relevant case law, the NJCFA still requires a plaintiff to bear the ultimate burden of showing a causal link between the offending practice and the claimed loss, with the amount of ascertainable loss to be demonstrated to a reasonable degree of certainty, as discussed below.

The fact that NJCFA uses slightly different terminology than TILA does not lift from a plaintiff the burden of showing that the offensive practice caused her harm. The text of the statute states that a plaintiff is entitled to treble damages when she has suffered an ascertainable loss "as a result of" the unlawful practice. This language clearly requires a showing of cause and effect.

New Jersey's courts have interpreted the NJCFA as requiring a causal link between the practice and the harm. The New Jersey Supreme Court has stated that in order to recover damages under NJCFA, a plaintiff must "prove that the unlawful consumer fraud caused his loss." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 23, 647 A.2d 454 (1994). Even though a plaintiff need not actually expend a sum of money as a result of defendant's unlawful consumer practice in order to demonstrate a loss, the loss still must be established with a reasonable degree of certainty. *Id.* at 22, 647 A.2d 454. There must be a causal relationship between the ascertainable loss and the unlawful practice. *Roberts v. Cowgill*, 316 N.J.Super. 33, 41, 719 A.2d 668 (App.Div.1998).

The Appellate Division has recognized that, where the offensive practice is a knowing omission, it may be difficult for a plaintiff to establish that the defendant's incomplete representation caused a loss. Thus, in the case of a knowing omission, there should be a presumption of reliance. *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J.Super. 31, 49–50, 752 A.2d 807 (App. Div.2000). This presumption recognizes that it is often difficult for a plaintiff to

each class member was charged the third-party's cost plus an additional amount added and then retained by the defendant. Pl. Br. in Opp. at 13–14 & n. 6. Citing *Miller v. American Family Publishers*, 284 N.J.Super. 67, 663 A.2d 643 (Ch.Div.1995), plaintiff asserts that this case presents an example of *Miller's* teaching that "[w]henever a consumer has received something other than what he bargained for, he has suffered a loss of money or property." *Id.*, quoting *Miller*, 284 N.J.Super. at 89, 663 A.2d 643. In fact, unlike *Miller*, plaintiff Cannon received what she bargained for, an extended service contract through Interstate, which has not been alleged to be deficient or less than she was given to believe. In *Miller*, on the other hand, the consumers were told that they had a better chance to win a publisher's sweepstakes if they bought a magazine subscription than if they did not. *Miller* at 72, 663 A.2d 643. In other words, they were told "that for their money they would receive two things:

first, a magazine subscription; and second, the ability to remain a part of defendant's sweepstakes . . . and an enhanced likelihood of winning that sweepstakes," *Miller* at 88, 663 A.2d 643. The linchpin of the *Miller* claim under the NJCFA is the requirement "that the item is different from that for which he bargained." *Id.* at 89, 663 A.2d 643, *quoting Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 440 A.2d 810, 814 (1981). Because Cannon received the extended warranty protection as promised by Cherry Hill Toyota, this is not a case where any ascertainable loss can be measured by the value of something not received as promised.

Her claim on Count III, it should be noted, may stand on different footing, having allegedly been promised a front-wheel drive car while only a rear-wheel drive model was provided, similar to *Hinchliffe* whose vehicle was advertised as full-time four-wheel drive, when it had a lesser mechanism. 440 A.2d at 814, n. 2.

establish after the fact that she would have behaved differently had she received more complete information. In the absence of evidence to the contrary, it will be presumed that the misrepresentation was relied on. *Id.* at 50, 752 A.2d 807 (quoting *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). Once the plaintiff makes a preliminary showing of causation in fact (*i.e.,* that defendant knowingly omitted facts), "the burden then shifts to the defendant to prove 'that even if the information were disclosed, the plaintiff would not have acted differently.'" *Id.* (citing *Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1520 (10th Cir.1983)).

If the defendant comes forward with evidence rebutting the presumption of causation, this burden shifting framework creates a distinct possibility that even though a plaintiff has established that a fraudulent consumer practice took place, he still might be precluded from recovering treble damages under the Act because of a lack of evidence that the practice caused an ascertainable loss. *See Feinberg v. Red Bank Volvo, Inc.,* 331 N.J.Super. 506, 511, 752 A.2d 720 (App.Div.2000) ("One aspect of the philosophy behind the statute's trebling feature is to compensate fully a party who is unable to obtain redress without resort to the courts. One should not be able to obtain treble damages ... if there has not even been a prior demand to be made whole.")

██ In this case, although the defendant has violated NJCFA by failing to state completely the price term of the MBP warranty, the plaintiff has failed to adduce any evidence tending to show that she suffered an ascertainable loss as a result of defendant's misrepresentation. As the Court noted in connection with the TILA claim, plaintiff has failed her burden of marshaling facts showing that (1) she would have sought a cheaper warranty, and (2) that she would have succeeded in her quest. Plaintiff thus has failed to create a triable issue that she suffered an ascertainable loss as a result of Cherry Hill's NJCFA violation, and plaintiff's demand for damages under that Act will be stricken.[5]

## CONCLUSION

For the reasons discussed herein, the Court will grant the parties' cross-motions in part and will deny them in part. Plaintiff's motion for partial summary judgment will be granted to the extent that it seeks to establish as a matter of law that defendant violated TILA and NJCFA, but is otherwise denied. Defendant's motion for partial summary judgment is granted in part, and the Court will strike plaintiff's demand for actual damages under TILA, and for damages under NJCFA. Defendant's motion is otherwise denied. This case shall be set for trial for determination of the proper award of TILA statutory damages owing plaintiff and the class on Count One, and for determination of the merits of and plaintiff's Count Three. After trial plaintiff will be permitted to move for reasonable attorneys' fees and costs in

5. While defendant's plain violation of NJCFA might entitle plaintiff to recover attorneys' fees and costs, awarding fees and costs under NJCFA may be redundant of the fees and costs to be awarded in connection with the TILA claim. It also bears mention that, because of the different proof burdens involved, any award of statutory damages under TILA is not subject to trebling under NJCFA. Whether a separate award of attorneys' fees is available in connection with plaintiff's proof of the NJCFA violation is not determined at this time as to Count Two. Further, any entitlement to NJCFA attorneys' fees in connection with Count Three must await outcome of plaintiff's claim thereon regarding the alleged substitution of a non-front wheel drive vehicle.

accordance with 15 U.S.C. § 1640(a)(3), as well as in accordance with NJCFA if appropriate.

### ORDER

THIS MATTER having come before the Court on the parties' cross-motions for partial summary judgment [Docket Entry Nos. 117, 118 & 120], and the Court having considered the parties' submissions, and for the reasons discussed in today's Opinion;

IT IS this —— day of August, 2001, hereby **ORDERED AS FOLLOWS:**

1. Plaintiff's motion for summary judgment is **GRANTED** to the extent that plaintiff requests that the Court find that defendant's conduct violated TILA and NJCFA as a matter of law;

2. **PARTIAL SUMMARY JUDGMENT IS ENTERED** against defendant on Counts One and Two insofar as defendant's conduct violated TILA and NJCFA, and insofar as plaintiff is entitled to receive an award of statutory damages under TILA in a sum to be determined after trial;

3. Plaintiff's motion is otherwise **DENIED;** and

4. Defendant's motion is **GRANTED** to the extent that it seeks an Order striking plaintiff's demand for "actual damages" under TILA, and striking plaintiff's entire demand for damages under NJCFA;

5. Plaintiff's demand for actual damages under TILA, and all damages under NJCFA are hereby **STRICKEN;**

6. Defendant's motion is otherwise **DENIED;**

7. This case shall be set for trial for determination of the proper award of TILA statutory damages owing plaintiff and the Class on Count One, and for determination of the merits of plaintiff's claim on Count Three. After trial plaintiff will be permitted to move for reasonable attorneys' fees and costs in accordance with 15 U.S.C. § 1640(a)(3), and also in accordance with NJCFA if appropriate as to Count Two, and in accordance with NJCFA if plaintiff prevails on Count Three.