860 A.2d 973 (2004)
373 N.J. Super. 103
Michael J. PRON, Plaintiff-Respondent,
v.
CARLTON POOLS, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 2004.
Decided November 18, 2004.
*974 Kenneth C. Russell argued the cause for appellant (Grimes & Grimes, attorneys; Patrick J. Grimes and Mr. Russell, on the brief).
Matthew S. Schultz argued the cause for respondent (Connell Foley, attorneys; Jeffrey L. O'Hara, of counsel; Messrs. O'Hara and Schultz, on the brief).
Before Judges KING, NEWMAN and HOLSTON, JR.
The opinion of the court was delivered by
HOLSTON, JR., J.A.D.
In this Consumer Fraud Act (CFA) case, defendant, Carlton Pools, Inc., appeals from the May 12, 2003 order awarding plaintiff, Michael J. Pron, attorneys' fees in the amount of $16,848.01 for a technical violation of the CFA. The violation was defendant's misrepresentation in its advertising not to use subcontractors in the construction of an in-ground pool. Defendant also appeals the July 15, 2003 order denying its motion for reconsideration. We reverse.
On March 11, 2002, plaintiff, Michael J. Pron, filed a five-count complaint against defendant alleging breach of contract, breach of express warranties, breach of implied warranties, unjust enrichment and consumer fraud arising from defendant's construction of an in-ground pool at plaintiff's residence. A bench trial was conducted on March 4, 2003.
The following facts were testified to at trial. On April 13, 2000, plaintiff entered into a contract with defendant for the construction of a 650-square-foot plaster in-ground pool. Before entering into the contract, defendant's representative made a presentation regarding the construction of the pool. According to plaintiff, the representative "kept dwelling on the fact that the whole pool will be constructed by Carlton... [that] they would not sub any *975 of the work out [and] use all their own employees." Defendant also provided plaintiff with a written advertisement that stated "[a]ll phases of your pool constructed by our own crews (No Sub-Contractors)." Plaintiff testified that this representation "was probably the biggest thing that got [him] to sign."
About a year after the construction, A & L Pools, a company plaintiff hired for maintenance on the pool, alerted plaintiff that the pool's plaster finish was substandard and would need to be replastered. There was etching, roughing and discoloration on the pool surface. Defendant sent two representatives to plaintiff's residence to inspect the pool. They conducted a sanding test and concluded that the pool's finish was not defective. Any change in the pool surface was seemingly due to improper application of chemicals, not to faulty materials or faulty construction of the pool surface.
During plaintiff's case-in-chief, Robert Olsen, director of operations for defendant, testified that two subcontractors were used in this project, an electrician and a gas plumber. Olsen, however, testified that no subcontractors were used in the "construction" of the pool. Rather, the subcontractors were used for the lighting and heating of the pool.
Following the presentation of plaintiff's evidence, defendant moved for a directed verdict on the contract, warranty and unjust enrichment claims. The court granted the motion. The court found that "[p]laintiff did not establish a prima facie case that [d]efendant's materials or workmanship was defective in any way to cause the problems with [p]laintiff's pool, and that [d]efendant did not breach its contract or warranty with [p]laintiff."
The judge, then, sua sponte, found that "plaintiff demonstrated that [d]efendant misrepresented the material fact that it would not utilize subcontractors in connection with the construction of the pool at issue ... but subcontractors were, in fact, used as part of the process." The court determined that defendant committed a technical violation of the CFA. However, the court concluded that plaintiff did not suffer any ascertainable loss as a result of this violation because the use of the subcontractors was unrelated to the discoloration, staining, etching and calcification of the plaster finish of the pool. The judge requested both parties to submit briefs concerning whether attorneys' fees and costs can be awarded for a violation of the CFA, even when no loss occurred.
In a written opinion, the judge, in finding an entitlement to attorneys' fees, quoted from Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994), where our Supreme Court stated: "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Since the judge was satisfied that defendant committed an unlawful practice in violation of the Act, the judge found plaintiff was entitled to recover attorneys' fees, filing fees and costs upon plaintiff's counsel filing a schedule of services with the court. By order dated May 12, 2003, the court awarded attorneys' fees, costs and expenses in the amount of $16,846.01.
Defendant filed a motion for a new trial. Defendant alleged that a new trial should be granted because it did not have an opportunity to present evidence to establish it did not commit a violation of the CFA. In a written opinion the judge noted that under R. 4:49-1(a), a motion for a new trial is granted only if there clearly and convincingly was a miscarriage of justice under the law. The judge held that defendant *976 failed to establish a "miscarriage of justice" and denied the motion.
Defendant advances three issues for our consideration. Defendant argues that the trial court erred in awarding attorneys' fees because our Supreme Court's decision in Weinberg v. Sprint Corp., 173 N.J. 233, 801 A.2d 281 (2002), clarified the dictum in Cox v. Sears Roebuck & Co., supra, 138 N.J. at 24-25, 647 A.2d 454, and precludes as a matter of law, in a CFA case, the awarding of attorneys' fees where, as here, the court grants a defendant's motion for an involuntary dismissal at the end of the plaintiff's case as a result of the plaintiff's failure to prove an ascertainable loss.
Defendant also contends that at the end of plaintiff's case, the judge erred in sua sponte finding as a matter of law that defendant violated the CFA, without granting defendant the right to present witnesses and other evidence that would have established there was no violation of the CFA. Defendant asserts that no subcontractors were used in the construction of the pool. Any subcontractors were licensed electricians and gas plumbers used for lighting and heating work, which is not part of the pool construction. Third, defendant claims the trial court erred in awarding attorneys' fees in the amount submitted by plaintiff, without examining the reasonableness of the attorneys' fees sought.
We are convinced Weinberg precludes the awarding of attorneys' fees in this case. It is unnecessary to address the second and third contentions asserted by defendant.
In Weinberg, plaiiff, Martin Weinberg, a residential telephone customer of defendant, filed a class-action lawsuit against defendant, Sprint Corporation, a national long-distance telephone service provider, that advertises and provides telephone services to New Jersey residents. Weinberg claimed that defendant's national television commercials induced residential customers to use its long-distance services by employing deceptive, fraudulent, misleading, and false advertising and promotional services designed to misrepresent and conceal its practice of charging a full minute of telephone usage, even if the caller was connected for even a few seconds. Weinberg v. Sprint Corp., supra, 173 N.J. at 237-38, 801 A.2d 281. Weinberg contended that the practice of "rounding up" resulted in millions of dollars in excess billing. Id. at 238, 801 A.2d 281.
Our Supreme Court in Weinberg found:
plaintiff has suffered no ascertainable loss because the filed rate doctrine precludes any award of damages to him or to the class, and so dismissal of the claim for damages was appropriate.[[1]]

*977 We also conclude that the Act requires ascertainable loss as an essential predicate for a private cause of action. Therefore, because plaintiff failed to demonstrate that his claim of personal ascertainable loss posed a genuine issue of material fact that required submission to a jury, his remaining claims for injunctive relief and for attorneys' fees properly were dismissed also.

[Id. at 240, 801 A.2d 281.]
The Court made clear that a private cause of action for consumer fraud only exists for victims of consumer fraud who have suffered an ascertainable loss of money or property. Id. at 250, 801 A.2d 281. In reviewing its decision in Cox, the Court stated, "Although we found that the plaintiff adequately demonstrated ascertainable loss under the Act and addressed all issues necessary to our decision, we further observed that even if the plaintiff is not successful in proving to the factfinder the existence of ascertainable loss, and thus unable to recover treble damages, the plaintiff can recover reasonable attorneys' fees and costs if he can prove that the defendant committed an unlawful practice." Id. at 253, 801 A.2d 281.
The Court then framed the issue in Weinberg, as follows: "The question now squarely before us is whether a plaintiff, who pleads but cannot survive a motion for summary judgment in respect of the issue of ascertainable loss, may proceed with remaining claims for ... attorneys' fees under the Act. We hold that that plaintiff cannot go forward." Ibid.
The Court continued:
The legislative intent to permit a private cause of action under the Act would be frustrated if a private litigant, who succeeds in bringing such a claim to a jury, must gamble on whether he or she will prevail ultimately on proof of the loss in order to obtain attorneys' fees, when he or she otherwise proves unlawful conduct.
Thus understood, the plaintiff with a bona fide claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act. The Act's remedial purposes are promoted thereby and the Legislature's requirement of ascertainable loss for a private cause of action is respected.
In this action, plaintiff failed to present such a claim of ascertainable loss because operation of the filed rate doctrine precluded him from any claim to monetary damages. He was charged the rate in defendant's filed tariff. He had no lawful claim to have been charged any other rate and could present no genuine issue of fact on his assertion of loss. We hold that the courts below correctly dismissed his claim for compensatory damages under the Act. Plaintiff may not proceed solely on his claims for injunctive relief and attorneys' fees. Accordingly, his remaining claims properly were dismissed.
[Id. at 253-54, 801 A.2d 281.]
*978 In this case, the trial judge in granting an involuntary dismissal under R. 4:37-2(b) determined that plaintiff had shown no ascertainable loss and no right to relief. The judge granted the motion because the damages to the swimming pool were not proximately caused by the electrical or heating subcontractors, whose use the plaintiff contended constituted a misrepresentation by defendant cognizable under the CFA.

R. 4:37-2(b) provides:
At Trial  Generally. After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.
A defendant's motion for an involuntary dismissal at the close of plaintiff's case, even where the trial is by the court without a jury, should be denied, if the plaintiff has proved a prima facie case. Pressler, Current N.J. Court Rules, comment 2 on R. 4:37-2(b) (2005). A prima facie case for purposes of R. 4:37-2 means "any evidence including any favorable inference to be drawn therefrom which could sustain a judgment in plaintiff's favor." Ibid. Conversely, a "dismissal is appropriate when no rational jury could conclude from the evidence that an essential element of the plaintiff's case is present." Ibid.
Our Supreme Court in Dolson v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969), stated: "the judicial function [on a motion for an involuntary dismissal under the rule] is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a mere scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." "The motion ordinarily may not be granted either on a party's application or the court's sua sponte until all the plaintiff's proofs have been presented." Pressler, Current N.J. Court Rules, comment 2 on R. 4:37-2(b) (2005).
The determination that there was no ascertainable loss in Weinberg, however, occurred not as a result of a motion for involuntary dismissal made after plaintiff presented all of his proofs and before the defendant's case would ordinarily begin. In Weinberg, Sprint was granted summary judgment under R. 4:46-2(c).

R. 4:46-2(c) provides,
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.
The essence of the inquiry is "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of *979 Am., 142 N.J. 520, 536, 666 A.2d 146 (1995), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)).
Under the CFA, proof of an ascertainable loss is a requirement for a private cause of action. Weinberg, supra, 173 N.J. at 249, 801 A.2d 281. Therefore, a plaintiff who pleads, but cannot survive a motion for summary judgment in respect to the issue of ascertainable loss, may not proceed with attorneys' fees under the Act. Id. at 253, 801 A.2d 281.
The standard for granting summary judgment and the standard for granting an involuntary dismissal at the end of the plaintiff's case are the same and functional equivalents. Schneider v. Simonini, 163 N.J. 336, 360, 749 A.2d 336 (2000), cert. denied, 531 U.S. 1146, 121 S.Ct. 1083, 148 L.Ed.2d 959 (2001); Van Meter v. Darien Park Dist., 207 Ill.2d 359, 278 Ill.Dec. 555, 799 N.E.2d 273, 278 (2003); Pressler, Current N.J. Court Rules, comment on R. 4:46-2 (2005). Both examine the plaintiff's proofs to determine if there is an issue of fact for a factfinder's decision. If there are no facts in dispute and the applicable law applied to the existing facts permits of but one result, the defendant is entitled to summary judgment as a matter of law or an involuntary dismissal.
In Weinberg, Sprint's customer suffered no ascertainable loss from paying for time "rounded up" to the next minute on the telephone bill, since the filed-rate doctrine precluded an award of money damages. Here, plaintiff, the swimming pool consumer, sustained no ascertainable loss by defendant's retention of an electrical and heating subcontractor even though the subcontracting for these functions was arguably contrary to the representation in defendant's advertisement and in the conversation between its representative and plaintiff. The damages to the swimming pool plaster had no proven causal connection to the alleged misrepresentation. The judge so found based on the evidence in the record at the conclusion of plaintiff's case. Defendant was not called upon or indeed permitted to present a defense because, as a matter of law, plaintiff failed to prove a prima facie case of an essential element for a private cause of action under the CFA. There was an involuntary dismissal of plaintiff's CFA claim because no ascertainable loss was proved.
We hold that in a Consumer Fraud Act case where the defendant obtains a motion for involuntary dismissal at the end of the plaintiff's case for failure to prove an ascertainable loss, and the defendant is not required to present its defense to the plaintiff's claim, and the fact-finder, whether judge or jury is not called upon to decide whether an ascertainable loss has been proved, plaintiff is not entitled to recover attorneys' fees.
Reversed.
NOTES
[1] The filed rate doctrine "`forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.'" Fax Telecommunicaciones, Inc. v. AT & T, 138 F.3d 479, 488 (2nd Cir.1998) (citing Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856, 863-64 (1981)). "`[T]he [FCA] does not permit either a [customer's] ignorance or the carrier's misquotation of the applicable rate to serve as a defense to the collection of the filed rate.'" Ibid. (quoting Maislin Indus., U.S., Inc. v. Primary Steel, Inc., 497 U.S. 116, 120, 110 S.Ct. 2759, 2763, 111 L.Ed.2d 94 (1990)). "[C]ustomers are `conclusively presumed' to have constructive knowledge of the filed tariff...." Id. at 489 (citing Kansas City S. Ry. Co. v. Carl, 227 U.S. 639, 653, 33 S.Ct. 391, 395, 57 L.Ed. 683 (1913)).

Thus, two policy goals are advanced by courts' strict application of the filed rate doctrine: (1) the prevention of price discrimination by carriers as among ratepayers; and (2) the preservation of the exclusive role of federal agencies in approving reasonable rates for telecommunication service and the exclusion of courts from the ratemaking process. Weinberg v. Sprint Corp., supra, 173 N.J. at 242, 801 A.2d 281 (citing Fax Telecommunicaciones, supra, 138 F.3d at 489 (citations omitted))." The Court further stated "In sum, the filed rate doctrine bars money damages from telecommunication carriers where the damage claims are premised on state contract principles, consumer fraud...." Id. at 243, 801 A.2d 281.