874 A.2d 1110 (2005)
378 N.J. Super. 105
Amiel DABUSH, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
MERCEDES-BENZ USA, LLC, f/k/a Mercedes-Benz Usa, Inc., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 2005.
Decided May 26, 2005.
*1111 Bruce D. Greenberg, Newark, argued the cause for appellant (Lite DePalma Greenberg & Rivas, attorneys; Mr Greenberg, Joseph J. DePalma, and John M. Podesta, on the brief).
James F. Bennett of the Missouri bar, admitted pro hac vice, argued the cause for respondent (Graham, Curtin & Sheridan and Bryan Cave, attorneys; Kathleen N. Fennelly, Peter W. Herzog, III, admitted pro hac vice, Mr. Bennett, and Thomas J. Palazzolo, admitted pro hac vice, on the brief).
Before Judges NEWMAN, AXELRAD, and HOLSTON, JR.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
Plaintiff Amiel Dabush, a vehicle lessee, appeals from summary judgment dismissing his class action against defendant Mercedes-Benz USA, Inc. (MBUSA), seeking damages under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20. Plaintiff claimed that MBUSA misrepresented, in a marketing brochure, the scope of coverage of the satellite-based navigation system in *1112 its 2000 S-class automobiles. Plaintiff was unable to obtain directions to an exact address from the navigation system in his vehicle and arrived forty minutes late to a business meeting; he did not lose any money or business due to his late arrival. The trial court found he did not sustain an ascertainable loss under the CFA.
On appeal, plaintiff contends the court applied the wrong legal standard for ascertainable loss under N.J.S.A. 56:8-19 by requiring him to show: (1) the existence of a navigation system on the market with the coverage as represented by MBUSA and (2) reliance on MBUSA's misrepresentations regarding the scope of coverage of the navigation system. Plaintiff also contends the court erred in limiting certification of the class to Connecticut and New Jersey residents. We affirm the grant of summary judgment based on plaintiff's failure to demonstrate an ascertainable loss under the CFA. Accordingly, the issue of class certification is moot.

I
Plaintiff, a Connecticut resident, was the co-owner of a company that developed software and hardware for the telecommunications industry. His expertise was in the software component of the company.
Plaintiff obtained a marketing brochure for a 2000 Mercedes S-Class vehicle at a local dealer. The brochure contained the statement  "The S-Class has a standard navigation system to help you find your way ..." with a picture depicting a highway sign pointing towards "Middle of Nowhere," "Nowhereville," and the "Boonies." The brochure further declared: "Using 24 satellites that transmit positioning signals to earth, the S-Class can tell what street it's on and what time zone it's in. Ship and aircraft navigators use the same system." As to the navigation system, the brochure specifically stated:
DID YOU EVER WONDER IF YOU'RE GOING THE RIGHT WAY?
THAT FEELING WILL SOON BE A FAINT MEMORY.
IF THERE'S A ROAD THAT GOES THERE, THE S-CLASS CAN SHOW YOU THE WAY.
Built into every 2000 S-Class is a satellite-based navigation system that helps get you to your destination by the quickest route, or the shortest distance, or by using more or fewer freeways. The navigation computer reads your latest copy of a CD-ROM map to start the process (a CD-ROM map of your region comes with the car). Enter your destination and your car pinpoints its location, using the GPS [Global Positioning System] satellite. As you travel, the car's wheel speed sensors and COMAND's [Cockpit Management and Data System's] gyroscopic sensor continually compare notes with the satellites to keep track of your progress.
CD-ROMs for additional areas, as well as periodic updates, are available at additional cost.
[Emphasis added].
The S-Class was MBUSA's flagship vehicle, retailing for approximately $70,000. The 2000 S-Class was first made available for lease or purchase in March 1999. Every 2000 S-Class contained as a standard feature the COMAND System, which included the control unit for the telephone, the radio/audio system, the cassette tape player, and the navigation system. As the brochure declared, the navigation system used a combination of satellite technology and map data contained on a CD-ROM to help the driver find a location. Satellite technology provided the location of the vehicle through GPS signals. Using these signals, the computer evaluated the map data in relation to the position of the vehicle *1113 and calculated a route to a determined destination. The navigation system split the United States into nine regions, each with its own CD-ROM. Each customer was provided with a CD-ROM for his or her region; CD-ROMs for other regions were available for separate purchase. These satellite-based systems were an option on MBUSA's 2000 E-Class models.
In March 1999, plaintiff leased a 2000 S-Class from a Mercedes-Benz dealer on Long Island. Plaintiff never test drove the car, tried the navigation system, or questioned the dealer about the navigation system before he signed his lease. Plaintiff deposed that he wanted to own the S-Class Mercedes because of the way it looked, its technology, and its "level of luxury." He also claimed the navigation system was "a major part of and the reason why [he] bought the car." A CD-ROM map for the New England region was included with his S-Class, containing maps for the states of Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont, and for the northern part of New Jersey, which included a southern border of counties formed by Hunterdon, Somerset, Middlesex, Monmouth, and Ocean.
On October 13, 1999, after having driven the vehicle for six months and thousands of miles, plaintiff got lost trying to drive to a business meeting in Aberdeen (Monmouth County), New Jersey. Contrary to the "COMAND Navigation System User's Guide" ("User's Guide"), plaintiff did not input the address of his destination into the navigation system before starting the trip. When plaintiff realized he had lost his way and the navigation system was not providing the assistance he needed, plaintiff pushed the "i" button, which automatically connected him via a telephone built into his car with one of MBUSA's customer service representatives. The representative checked NavTech's[1] website, and Aberdeen was not listed on any of its maps, so she obtained directions for plaintiff from an employee at the Aberdeen Borough Hall. Plaintiff arrived about forty minutes late to the meeting; he did not lose any money or business due to his late arrival.
Plaintiff complained to MBUSA, who responded by letter of October 26, 1999:
[W]e immediately contacted [NavTech] about your query pertaining to the percentage of areas digitized. They have advised that approximately 60 percent of areas are digitized at this point in time. Please be aware, however, that the task of creating detailed information for each street in the USA is very large and time consuming. NavTech is working continuously to prepare detailed city coverage data for all of the population centers in excess of 100,000 by the year 2004. Beyond this time, smaller population areas will be added as resources allow. Since new data is constantly added to the database, newly updated CD Roms can be helpful for the navigation system user.
Because of plaintiff's complaints, MBUSA offered to buy the vehicle back before the end of the lease, provided plaintiff pay an additional $6500 for excess mileage and for depreciation due to plaintiff's replacement of the original hood. Plaintiff refused the offer. In November 2000, plaintiff and other owners of Mercedes equipped with the COMAND system were provided updated navigation CD-ROMs at no cost. Plaintiff's lease expired in March 2002, and he returned the vehicle.

*1114 II
On June 2, 2000, plaintiff filed a class action against MBUSA for breach of contract (count one) and for violation of the CFA (count two), alleging the satellite navigation system included as standard equipment on the S-Class Mercedes that he had leased did not work as advertised in the marketing literature for the vehicle. Plaintiff presented evidence that defendant knew the database coverage was less than 100% when the S-Class was launched in March 1999. Plaintiff also submitted the report of David H. Kinney, an expert automobile appraiser, on the issue of damages. Kinney opined: (1) the replacement cost of the COMAND system in the S-Class, which included the navigation system, was at least $4666; (2) the navigation system alone would cost at least $1995 if it had been offered as an option; and (3) the value of the navigation system, as opposed to its price, if it functioned as represented in defendant's brochure, was $4000. Kinney's determinations were based on the manufacturer's suggested price of the navigation system available as an option in MBUSA's E-Class automobiles, which was identical to the system in the S-Class, and information that MBUSA had offered future credits of $3250 to E-Class customers who wanted to buy a navigation system as an option but received cars that could not be retrofitted with that system.
MBUSA presented the report of Bobby J. Calder, an expert in marketing and psychology, who opined that plaintiff's reaction to the vehicle he leased and its navigation system was not that of an average or typical consumer of the vehicle. It also presented the report of Herbert E. Walter, a business and financial consultant with experience in the automotive industry, which disputed Kinney's opinions and his methodologies as to damages. MBUSA further presented the User's Guide that was provided to customers who purchased a 2000 S-Class vehicle, which stated, among other items, that urban and suburban areas had more detailed coverage than rural areas and that only "major, named roads" are included for rural and interstate locations. In addition, the User's Guide specifically warned that navigation CD-ROMs might contain "inaccurate or incomplete data or information" and stated that the driver was to input the destination's address before starting on a journey. MBUSA also presented a certification of Eric Wendell, an engineer and manager of its parts department, that the street data contained on the CD-ROMS could never be completely up-to-date because of the very nature of software and changes in the local transportation systems. He declared that "[t]he Navigation System in the Mercedes S-Class vehicles was designed to aid customers in arriving at locations, but was never intended to completely replace paper maps or other means of vehicle navigation. The Navigation System is simply a supplemental system."
In earlier motions, the court ruled that New Jersey law would apply to plaintiff's individual claim. On March 1, 2002, the court denied plaintiff's request for a nationwide class but certified a class limited to Connecticut and New Jersey residents. We denied leave to appeal, as did the Supreme Court. By order of April 5, 2002, the trial court granted partial summary judgment in favor of MBUSA as to plaintiff's breach of contract claim (count one), finding a lack of privity between the parties and declaring that plaintiff failed to establish as a matter of law that the marketing brochure established an enforceable contract. This ruling has not been appealed. The court denied summary judgment as to plaintiff's CFA claim (count two).
*1115 Following completion of discovery, MBUSA renewed its motions to decertify the class and for summary judgment on the CFA. Judge Mecca declined to modify the prior judge's ruling on class certification. In ruling on MBUSA's motion for summary judgment on the CFA claim, the judge found a genuine issue of material fact as to whether defendant's statements in its marketing brochure were affirmative misrepresentations in violation of the CFA and had the capacity to mislead the average consumer. Nevertheless, the judge granted partial summary judgment to MBUSA, finding that plaintiff offered "absolutely no evidence of [MBUSA's] intent to mislead or knowing omission" as required by N.J.S.A. 56:8-2, and did not prove with reasonable certainty any ascertainable loss of money or property as a result of the alleged violation of the CFA, as required by N.J.S.A. 56:8-19. This ruling was memorialized in an order of July 16, 2003.
The court initially held that plaintiff could pursue attorney fees, but following cross-motions for reconsideration, granted MBUSA's motion to dismiss plaintiff's claim for damages in its entirety pursuant to Weinberg v. Sprint Corp., 173 N.J. 233, 801 A.2d 281 (2002), which mandates dismissal of the entire case if no ascertainable loss is present. The court denied plaintiff's cross-motion for reconsideration, holding that plaintiff failed to identify either a controlling decision that the court had overlooked or any new evidence that would permit revisiting the merits. These rulings were memorialized in orders of August 25, 2003. Plaintiff's appeal ensued.

III
In determining a motion for summary judgment, the judge must decide whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The essence of the inquiry is "`whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill, supra, 142 N.J. at 536, 666 A.2d 146 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986)). On appeal, we apply the same standard. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998).
The CFA affords a private cause of action under limited circumstances. To state a claim under the CFA, a private "plaintiff must allege each of three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.Super. 8, 12-13, 842 A.2d 174 (App.Div.), certif. denied, 178 N.J. 249, 837 A.2d 1092 (2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24, 647 A.2d 454 (1994)).
The proscribed unlawful conduct is defined as:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, *1116 false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise... whether or not any person has in fact been misled, deceived or damaged thereby[.]....
[N.J.S.A. 56:8-2.]
"To constitute consumer fraud ... the business practice in question must be `misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer...." Schering-Plough, supra, 367 N.J.Super. at 13, 842 A.2d 174 (quoting Turf Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416, 655 A.2d 417 (1995), cert. denied, 516 U.S. 1066, 116 S.Ct. 752, 133 L. Ed.2d 700 (1996)). Courts in New Jersey have also recognized a distinction between misrepresentations of fact actionable under the CFA and mere puffery about a product that will not support relief. See Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621 (1991) ("However persuasive, `You're in good hands with Allstate,' is nothing more than puffery"); Schering-Plough, supra, 367 N.J.Super. at 13, 842 A.2d 174 (statements in pharmaceutical company's advertising for allergy medication that "you ... can lead a normal nearly symptom-free life again" were not understood by consumers as a guarantee of total and universal effectiveness of the product and were in the nature of puffery and not actionable under the CFA).
We query in the first instance whether the statement contained in MBUSA's brochure "IF THERE'S A ROAD THAT GOES THERE, THE S-CLASS CAN SHOW YOU THE WAY" was an actionable statement of fact within the meaning and intendment of the CFA, rather than mere puffery. MBUSA did not cross-appeal the court's denial of its summary judgment motion asserting that this representation did not serve as a basis for a CFA claim under N.J.S.A. 56:8-2. Nor did MBUSA argue in its brief that summary judgment could be sustained on alternate grounds, even though counsel made this argument orally. Resolution of this issue, however, is not necessary in view of our affirmance of the trial court's finding of plaintiff's failure to prove an ascertainable loss under the CFA.
Simply showing a violation of the CFA, however, is insufficient to entitle a private citizen to damages under the Act. "[T]he [CFA] does not provide for recovery of statutory damages where a plaintiff cannot show actual harm." Cannon v. Cherry Hill Toyota, Inc., 161 F.Supp.2d 362, 373 (D.N.J.2001). While the Attorney General does not have to prove that the victim was damaged by the unlawful conduct in order to recover any damages, Cox, supra, 138 N.J. at 21, 647 A.2d 454, a private plaintiff must demonstrate "an ascertainable loss of moneys or property, real or personal," as a result of the defendant's unlawful conduct. N.J.S.A. 56:8-19. "[T]o have standing under the Act a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment." Weinberg, supra, 173 N.J. at 237, 801 A.2d 281; see also Pron v. Carlton Pools, Inc., 373 N.J.Super. 103, 113, 860 A.2d 973 (App.Div.2004) (applying the Weinberg doctrine in CFA case where defendant obtained involuntary dismissal at the end of plaintiff's case for failure to prove an ascertainable loss).
Even though a plaintiff need not actually expend a sum of money as a result of defendant's unlawful consumer practice in order to demonstrate a loss, the amount of the loss must be ascertainable and must be established with reasonable certainty. *1117 Cox, supra, 138 N.J. at 22, 647 A.2d 454. Plaintiff "bear[s] the ultimate burden of showing a causal link between the offending practice and the claimed loss, with the amount of the ascertainable loss to be demonstrated to a reasonable degree of certainty[.]" Cannon, supra, 161 F.Supp.2d at 374.
Plaintiff contends his ascertainable loss was the failure to receive the benefit of his bargain because the navigation system did not give him directions to and from every road. Essentially plaintiff claims he paid a higher price for a less effective product; he paid for something he did not receive. Plaintiff further claims he supplied an estimate of damages calculated within a reasonable degree of certainty sufficient to demonstrate an ascertainable loss under Cox, supra, 138 N.J. at 22, 647 A.2d 454. He points to his expert's testimony concerning the replacement cost of the entire COMAND system, the value of a navigation system that could function as represented, and the cost of the system as an option available in Mercedes E-Class vehicles.
MBUSA counters that, even if there were a violation of the CFA, plaintiff did not demonstrate an ascertainable loss because he (1) did not pay extra for the COMAND system which included the navigation component, as it was a standard feature on the vehicle he leased; (2) did not show that his loss was the cost of replacing the system with one that had better map data, because all other cars with a navigation system used the same data; or (3) did not claim that his late arrival at the meeting cost him money or property such as lost work time or failure to gain additional work or some other actual harm. We agree with MBUSA.
In a supplemental submission, R. 2:611(d), plaintiff sought to rely on a subsequently decided published opinion by another panel of our court, Thiedemann v. Mercedes-Benz USA, 369 N.J.Super. 402, 849 A.2d 196 (App.Div.), certif. granted, 181 N.J. 547, 859 A.2d 692 (2004).[2] The Thiedemann case had been argued before the Supreme Court but had not been decided as of the time of oral argument on the present appeal and submission of our initial opinion for filing. We found plaintiff's reliance on Thiedemann to be misplaced. In that case, car owners of a series of Mercedes-Benz models from 1998 to 2000 brought a class action suit against the manufacturer, alleging that defective fuel gauges in their cars amounted to a violation of the CFA. One of the named plaintiffs purchased a vehicle; the other one leased a vehicle. Id. at 405-06, 849 A.2d 196. The complaint alleged a "fuel sending unit defect" which resulted in the sudden, unexpected and dangerous depletion of fuel "such that the amount of gasoline in the fuel tank [would] not properly be reflected on the dashboard fuel gauge" and an operational failure of the vehicle would occur while in use. Id. at 404, 849 A.2d 196. The defect could not be cured and was apparently present in every replacement component. Id. at 408, 849 A.2d 196. All repairs to the unit were done under warranty at no cost to the plaintiffs and they never ran out of gasoline while driving the vehicles. Id. at 405-06, 849 A.2d 196. For summary judgment purposes, defendant conceded that the fuel-sending unit was defective and it had knowledge of the defect. Id. at 408, 849 A.2d 196. The plaintiffs advanced two theories of loss: the cost of repairs under warranty and the failure to receive the *1118 benefit of the bargain by having to drive vehicles with defective fuel sending units. Id. at 411-12, 849 A.2d 196.
A panel of this court reversed the grant of summary judgment dismissing the complaint, finding plaintiffs presented sufficient evidence to raise a debatable question of an ascertainable loss. The panel rejected the argument that the plaintiffs' loss could be measured by the money defendant had to expend to replace the fuel-sending component and declined to address the benefit-of-the-bargain theory, recognizing in essence a new theory of ascertainable loss under the CFA:
[P]laintiffs have a car with a defect in a significant component, which defect is present in every replacement of that component, and will likely manifest itself at some future time. We believe that common knowledge, indeed common sense, compels a conclusion that the value of the vehicle is impaired to a measurable, if presently unknowable degree. Can it possibly be doubted that if the [plaintiffs who purchased the vehicle] sought to sell their car on the used car market, and advised prospective buyers of the fuel-sending unit problem, that they would receive less than if the vehicles had no such defect? We think not.... The loss we posit is not simply a loss of consumer expectation or an unquantifiable benefit-of-the-bargain loss. There is more here than just a sense of unease in driving a car that has a potential problem that could impact on safety. There is a loss in value, not simply a loss of expectation. Of course, to quantify damages, plaintiffs will have to quantify that loss in some manner, but that proof need not be offered at this stage in order to defeat summary judgment.
[Id. at 413-414, 849 A.2d 196.]
We concluded it was irrelevant whether or not we agreed with the novel theory advanced by the panel in Thiedemann recognizing a hypothetical loss of resale value as an ascertainable loss under the CFA, as that case is factually and legally inapposite to the present case. Contrary to the present plaintiff's assertion, the court in Thiedemann did not recognize the car owners' benefit-of-the-bargain loss theory as a cognizable ascertainable loss under the CFA. Additionally, the court expressly rejected the car owners' claims of an ascertainable loss based on money expended by the manufacturer to replace the defective item. Most critically, the defect which could not be cured had a "readily apparent impact on safety" which particularly imposed a hazard because of the consumers' absence of knowledge. Id. at 409-10, 849 A.2d 196.
The diminution of the resale value of the vehicle is not an issue in the present case, as was acknowledged by plaintiff's counsel at oral argument. Plaintiff declined MBUSA's offer to buy the vehicle back before the end of the lease with no reduction for the allegedly faulty navigation system. He continued to drive the car for the two-and-one-half years remaining on the lease. Any diminution in the value of the vehicle would be shifted to the lessor upon its return. Moreover, the navigation system does not implicate a safety concern. Nor was it a recurring problem. From the outset, it was anticipated and represented that the navigational data would be updated. In fact, in November 2000, plaintiff and other owners of Mercedes equipped with the COMAND system were provided with updated navigation CD-ROMS at no extra cost.
Due to a processing delay, our initial opinion was submitted to this court's clerk's office prior to the release of the Supreme Court's decision in Thiedemann but was not filed until after the Thiedemann opinion, necessitating this revision *1119 of our opinion to reflect the current case law. 183 N.J. 234, 872 A.2d 783 (2005). We permitted both counsel to forward supplemental submissions addressing the Court's decision. Contrary to plaintiff's assertion, the Thiedemann opinion lends further credence and support to the analysis contained in our initial opinion.
In reversing this court and directing the entry of summary judgment in favor of Mercedes, the Court in Thiedemann found plaintiffs' proofs were insufficient to support a finding or inference that plaintiffs suffered a quantifiable or otherwise measurable loss as a result of the alleged CFA violation. Id. at 238, 872 A.2d 783. The Court set forth in full and adopted the trial court's reasoning in dismissing the complaint, which insightful comments apply equally to the appeal before us:
Defendant maintains that each time the plaintiffs encountered a problem related to fuel with their vehicles, the problem was repaired at no cost to plaintiffs. Furthermore, the Flahertys have not endured a fuel-related problem since March 2001 and Lam has not endured such a problem since February 2001. None of the plaintiffs [have] spent a single penny in relation to the fuel system problems they experienced. Nevertheless, plaintiffs attribute to themselves as a species of damages, an unincurred cost of repair extrapolated from defendant's internal warranty remediation efforts. Plaintiffs further assert an inchoate and unsubstantiated loss of the benefit of the bargain. Plaintiffs insist that they did not get what they bargained for and instead received an unsafe motor vehicle with a known fuel-reporting defect. Essentially, what plaintiffs urge here is that they are entitled to a Mercedes-Benz motor vehicle without any flaws or glitches, without any reasonably-remediable problems, and without any of the ordinary tribulations of automobile ownership or lease: in other words, a perfect car unaffected by the laws of physics and common sense. Plaintiffs are not so entitled, and they may not seek legal remedies because of their unrealistic disappointment. If plaintiffs' position were to be sustained  that is, their subjective and intangible disenchantment be translated into legally recoverable damages  it would severely impair the working relationship among automobile manufacturers, distributors, and consumers and undermine the efficacy of the very warranties consumers have fought so hard to obtain and protect. Here, defendant has honored every warranty claim made by plaintiffs and has made their motor vehicles fully operational with minimal consumer travail. Is not that the way the consumer society is supposed to work? The record in this case discloses nothing more than an efficiently operating consumer complaint and remediation system. To allow plaintiffs any remedies in this case  on this record  would interrupt and distort that system. Within each of plaintiffs' theories[,] damages are an essential element that must be proved to the satisfaction of the trier of the facts. For purposes of analysis, the least searching and most indulgent standard that plaintiffs must satisfy is the notion of an ascertainable loss within the meaning of the New Jersey Consumer Fraud Act. Here, no rational fact finder could conclude that plaintiffs suffered an objectively ascertainable loss or damage, even under the lens of the expansively protective legislative purpose of the Consumer Fraud Act and this State's public policies affording broad protection to consumers against deceptive commercial practices.

*1120 [Id. at 243, 872 A.2d 783 (emphasis added).]
In defining the elusive term "ascertainable loss," N.J.S.A. 56:8-19, the Court stated, "[t]o give effect to the legislative language describing the requisite loss for private standing under the CFA, and to be consistent with Weinberg,[3] a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." Id. at 248, 801 A.2d 281. Recognizing that defects often arise in connection with "complex instrumentalities such as automobiles", Justice LaVecchia noted that "[t]he ascertainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods. The importance of maintaining that balance is obvious." Id. at 251, 801 A.2d 281. The Justice concluded:
The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser. Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties. The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate "loss" that the CFA expressly requires for a private claim under the CFA, bringing with it the potential for treble damages, attorney's fees, and court costs and fees.
....
We are not persuaded as to the correctness or appropriateness of the Appellate Division's resort to common knowledge or common sense to provide the needed additional support for plaintiffs' claim of loss of benefit-of-the-bargain based on a vehicle problem that required warranty service. The warranty program was part of plaintiffs' bargain and it was provided, as required, by defendants. Plaintiffs need to produce specific proofs to support or infer a quantifiable loss in respect of their benefit-of-the-bargain claim; subjective assertions without more are insufficient to satisfy the requirement of an ascertainable loss that is expressly necessary for access to the CFA remedies.

[Id. at 251-52, 801 A.2d 281 (emphasis added).]
Specific to our case, the Court further found that since one of the plaintiffs leased her vehicle and did not own it, "she is unable to advance an argument that she might be able to demonstrate loss in future resale value due to alleged, potentially defective replacement parts, assuming some proof to support that claim. At the end of the lease, the party who receives back the leased vehicle is the one that arguably receives a vehicle having some diminution in future value." Id. at 253, 801 A.2d 281.
Plaintiff's benefit-of-the-bargain argument is founded on a loss of expectation based on a utopian concept similar to that rejected in Thiedemann. Even though in the present case plaintiff does not assert a mechanical defect in the automobile rectifiable by warranty, the Thiedemann rationale applies here with equal force. Plaintiff's loss must rest upon an objectively reasonable basis. The navigation system is exactly what it was designed and intended to be; an aid to navigation, not a perfect instrumentality of navigation. A reasonable consumer would expect no more, namely, a device that directs the driver to most destinations most of the time. The extent of coverage of other navigation systems on the market is relevant to this inquiry. The MBUSA data was state-of-the-art *1121 and as good as any other replacement system available from any automobile manufacturer at the time. In fact, as plaintiff's own expert conceded at depositions, there was no "navigation system offered by any manufacturer contained in any 2000 model year vehicle sold in the United States that [had] all streets and roads in the United States on it." Thus plaintiff's asserted loss was based on an unreasonable expectation of what was "promised" in the brochure  a perfect navigation system that would include data of all locations and provide directions no matter where he happened to be at a particular point. There was no navigation system in any automobile at the time that was capable of fulfilling this expectation.
MBUSA's advertising also has to be causally related to plaintiff's loss. While the element of traditional reliance required in a fraud case need not be proven in order to recover damages under the CFA, a private plaintiff must still "prove a causal nexus between the alleged [misrepresentation]" and his or her damages. Schering-Plough, supra, 367 N.J.Super. at 15, 842 A.2d 174; Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000). In Schering-Plough we rejected the plaintiffs' attempt to merge reliance and causation by theorizing that defendant's advertising of its products caused the prices to rise both for those that were effective and for the allegedly ineffective products as well; therefore, the causal connection between the misstatements about the latter and their ascertainable loss is "they must have paid a higher price for the less effective product." Schering-Plough, supra, 367 N.J.Super. at 16, 842 A.2d 174. We "decline[d] the invitation to stretch the bounds of the [CFA] to such an extent" as to allow "the relationship between the alleged misstatement and the ascertainable loss suffered [to] become so attenuated that it would effectively disappear," deeming that result contrary to the Court's holding in Weinberg. Schering-Plough, supra, 367 N.J.Super. at 16, 842 A.2d 174.
Though couched in different terms, plaintiff advances the same "price-inflation" theory that we rejected in Schering-Plough. He claims he paid for the lease of a vehicle that he expected to contain a navigation system that had all roads and highways and, therefore, he must have paid a higher price for the less effective product which did not contain full coverage of every road. Adopting this theory of ascertainable loss would "fundamentally alter the concept of causation in the CFA context," ibid., and would effectively afford private citizens rights that the Legislature has expressly reserved for the Attorney General.
Nor, as a lessor, is plaintiff able to advance an argument that he might be able to demonstrate loss in future resale value due to the allegedly defective navigation system. Thiedemann, supra, 183 N.J. at 253, 872 A.2d 783. Plaintiff's proofs are also deficient in that he presented no evidence whatsoever concerning any cost, price or value of the navigation system itself. Nor did plaintiff present any evidence, expert or otherwise, from which an estimate of the value of the navigation system as delivered compared to the value of the navigation system as allegedly promised could be calculated within a reasonable degree of certainty. Plaintiff's evidence of the hypothetical retail cost of a COMAND system that was not optional does not provide a reasonably certain estimate of damages regarding the S-Class navigation system. With no out-of-pocket loss attributable to the allegedly defective navigation system and no evidence of value or cost of the navigation system, plaintiff's claim is insufficient as a matter of law "to *1122 satisfy the CFA requirement of a demonstration of a quantifiable or otherwise measurable loss as a condition of bringing a CFA suit." Id. at 252, 872 A.2d 783.
Contrary to plaintiff's assertion, Judge Mecca did not impermissibly engraft a "reliance standard" on the CFA; rather, he appropriately required plaintiff to satisfy the causation element of the CFA. There was ample basis in the record for the court's conclusion that plaintiff's evidence, as a matter of law, was insufficient to establish with reasonable certainty the likelihood of an ascertainable loss under the CFA. Even if the statements contained in MBUSA's advertising brochure misrepresented the scope of the navigation system of plaintiff's vehicle and resulted in plaintiff driving to Aberdeen without consulting a map or obtaining directions before he left, getting lost along the way, and arriving forty minutes late to a meeting, we agree there is no ascertainable loss shown within the intendment of the CFA.
Summary judgment was appropriately granted on the issue of ascertainable loss, and attorney fees are not recoverable. Weinberg, supra, 173 N.J. at 253, 801 A.2d 281 (holding that a plaintiff, who pleads but cannot survive a motion for summary judgment in respect of the issue of ascertainable loss, may not proceed with remaining claim for attorney's fees under the CFA).
Affirmed.
NOTES
[1] Navigation Technologies Corp. (NavTech) provided the map data for the navigation system in the 2000 S-Class. NavTech was the exclusive provider of map data to all navigation system suppliers.
[2] As discussed infra, the Appellate Division decision was reversed by the Supreme Court on May 18, 2005. 369 N.J.Super. 402, 849 A.2d 196 (App.Div.2004), rev'd, 183 N.J. 234, 872 A.2d 783 (2005).
[3] Weinberg v. Sprint Corp., 173 N.J. 233, 801 A.2d 281 (2002).