**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2489-19

ENVISION FINANCIAL GROUP,
LLC, assignee of AA BAIL
BONDS, INC.,

     Plaintiff-Respondent,

v.

BERNARD GREEN, CELISA
LEWIS, WARREN PATTERSON,
MICHELLE L. MALKIN,
LITONYA JENNINGS, TRACY
LEWIS, and KENNETH CLARK II,

     Defendants,

and

TIMOTHY JACKSON, SR.,

     Defendant-Appellant.

_____

Submitted October 20, 2021 – Decided November 9, 2021

Before Judges Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3859-15.

Mattleman, Weinroth, & Miller, PC, attorneys for appellant (Sheera G. Engrissei, of counsel and on the briefs).

Saldutti Law Group, attorneys for respondent (Thomas B. O'Connell, of counsel and on the brief).

PER CURIAM

Defendant Timothy Jackson (defendant) appeals from a September 15, 2020 order granting summary judgment to plaintiff Envision Financial group, LLC, assignee of AA Bail Bonds, Inc. (AA) in this collection action. We affirm in part and reverse and remand in part.

We derive the following facts from the record. Bail was set at $800,000 on the nephew of defendant's wife. On February 20, 2009, defendant executed a "Promissory Note Premium Plan Agreement" (Note) with AA to finance the $80,000 bail bond premium, $24,000 of which was paid initially, with the $56,000 balance to be paid in monthly installments of $1,500 commencing November 9, 2009.

AA assigned the Note to plaintiff on September 27, 2017, as part of an Accounts Receivable Purchase Agreement. Plaintiff remained the holder of the Note. The note was secured by a lien on the residence owned jointly by defendant and his wife. Defendant defaulted on payments due under the note.

On October 9, 2015, AA filed a complaint against defendant and seven other individuals alleging breach of contract. The complaint alleged defendant and seven others owed $76,550.00 under the bail bond agreement plus $19,137.50 in contractual attorney's fees. AA attempted personal service on defendant three times, using the address listed on the account, but the process server was told by an occupant that they did not know defendant, despite that address being used as collateral for the bond. AA performed a skip trace of defendant's possible addresses which flagged a High Point, North Carolina residence. AA served the summons and complaint by regular and certified mail addressed to the North Carolina address. After defendant did not file a responsive pleading, AA requested entry of default judgment, which was entered against defendant on May 17, 2016, in the amount of $95,977.50, inclusive of contractual attorney's fees and court costs.

Defendant's wife's obligation on the debt was discharged in bankruptcy. AA obtained a writ of execution against defendant's assets. The Mercer County Sheriff's Office levied on defendant's bank account and plaintiff moved for a turnover of the funds ($8,169.67).

On May 29, 2019, defendant filed a motion to vacate the default judgment and stay enforcement of the writ of execution on grounds of improper service of

A-2489-19

process. While that motion was pending, on June 6, 2019, the trial court granted turnover of the funds to plaintiff's counsel.

The court heard oral argument on defendant's motion on June 21, 2019, but reserved decision to afford the parties to discuss settlement options. On July 12, 2019, the court entered an order vacating the judgment as to defendant only, with instructions for defendant to file an answer within fifteen days, and for AA to file a motion for summary judgment returnable on August 30, 2019.

Defendant filed an answer and counterclaim alleging breach of the implied covenant of good faith and fair dealing (count one), negligence (count two), and violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20 (count three). Plaintiff pursued discovery, including deposing defendant. Plaintiff then moved for summary judgment.

Defendant did not oppose the summary judgment motion but instead filed a motion to vacate the levy and dismiss the complaint with prejudice. On December 6, 2019, the court heard oral argument, reserved decision, and scheduled a plenary hearing.

The judge rejected defendant's statute of limitations and lack of standing arguments, finding they had no merit. He explained that the accrual date for the

cause of action is the breach of the contract and that is when the six-year statute of limitations begins to run.

Defendant further argued that plaintiff had misrepresented the balance due on the Note throughout the case. The judge determined he did not have enough information to assess whether a proper crediting had been done to the account and decided, "the money is going to be kept in the account, so the status quo is going to be kept." The court reserved decision due to time constraints.

When asked why the prior judge did not vacate the levy when he vacated default judgment, plaintiff's counsel explained that the money might have been lost and "we anticipate[d] getting a judgment" so the court made it a condition that the money remain frozen until "some later point in time." The judge then noted "it would [be] stupid for the depositor not to take the money out; right?" He was satisfied the levy should not have been vacated based on the expected future summary judgment motion.

The "plenary hearing," which consisted of oral argument without testimony, took place on January 15, 2020. The parties discussed differing amounts due, and after plaintiffs agreed to credit defendant an additional $24,000 aside from the original payment of $24,000, they agreed on $17,411.45 due plus court costs ($1,427.70) and attorney's fees ($4,352.86). Defendant

5

stated he agreed with the calculations. Defendant began to argue the amount had changed since plaintiff's original complaint was filed and the court responded, "You didn't make any payments. I don't know why you're complaining."

In response to how and why defendant came to sign the bond, defendant stated "[t]hey said because my name was on the deed, I had to cosign. I wouldn't be liable for anything. I was just giving her the ability to use the property as collateral." The court explained defendant signed a personal guarantee of $56,000 and denied his cross-motion because the approximately $8,000 in the bank was less than the amount for summary judgment. Finally, defendant stated he filed a motion for dismissal based on plaintiff's alleged violation of the Fair Debt Collection Act and the court responded he "can make that argument to the Appellate Division. All this is standard stuff."

Defendant filed this appeal on February 21, 2020. Thereafter, plaintiff applied for turnover of the funds held in escrow. The trial court issued an April 24, 2020 order that stayed turnover of the funds held in escrow in counsel's trust account pending appeal. It further ordered that plaintiff could reapply to turn over the escrowed funds if defendant's appeal was dismissed or denied.

A-2489-19

Defendant subsequently failed to respond to an information subpoena and plaintiff moved to enforce litigant's rights, which the court granted on May 8, 2020. Defendant then filed an amended notice of appeal.

Defendant raises the following points for our consideration:

> I. THE TRIAL COURT ERRED IN FAILING TO VACATE THE CORRESPONDING WRIT OF EXECUTION WHEN IT GRANTED APPELLANT'S MOTION TO VACATE THE JUDGMENT.
>
> II. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT, AS SIGNIFICANT ISSUES OF FACT REMAIN.
>
> 1. The Summary Judgment Standard.
>
> 2. Appellant's CFA Claim Should Have Survived Summary Judgment.
>
> 3. The Good Faith and Fair Dealing Claim Should Have Survived, As Well.
>
> 4. Summary Judgment for Respondent was also Inappropriate Because Respondent Submitted No Admissible Evidence to Support its Motion and Because it Lacks Standing.

A.

We first address the summary judgment granted to plaintiff. We review a grant of summary judgment using the same standard that governs the trial court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018)

(citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties" viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Ibid. (quoting Bhagat, 217 N.J. at 38). We owe "no special deference" to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

The trial court properly rejected defendant's argument that plaintiff lacked standing to enforce the Note. The certification of plaintiff's managing partner, and the exhibits attached thereto, established that plaintiff is the holder of the Note through the Accounts Receivable Purchase Agreement with AA.

Defendant admitted he made no payments to AA or plaintiff on the Note, and it was clear throughout the course of the hearings that the $8,000 levy on

his account was on the lower end of what he would likely owe. Moreover, defendant did not oppose the summary judgment motion, respond to plaintiff's statement of material facts, or file a counterstatement of material facts. Accordingly, "all material facts in the movant's statement which are sufficiently supported [are] deemed admitted for purposes of the motion only . . . ." R. 4:46-2(b).

As to defendant's CFA claim, he must establish: "(1) unlawful conduct by the defendants; (2) ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.'" Dabush v. Mercedes-Benz USA, LLC, 378 N.J. Super. 105, 114 (App. Div. 2005) (citation omitted). Defendant argues CFA violations under two theories. Defendant states AA engaged in "unconscionable and misleading conduct when [he] signed the note." He was allegedly told he would not be personally liable for the debt and he "only needed his signature because he held title to the property his wife wished to use as collateral." Defendant alleges the unlawful conduct by plaintiff was the "representation to [him] that he would incur no personal liability." However, during his deposition, defendant stated that it was his wife who told him he had to cosign in order to give her permission to use the property as collateral because his name was on

the deed, not AA. In any event, the clear and unambiguous language of the Note renders defendant personally liable for the balance of the bail bond premium. Defendant does not claim that he did not execute the Note.

Second, defendant alleges a CFA violation based on plaintiff's actions which "misled him about the amount of the debt." Defendant asserts that throughout the litigation, "each time he inquired about the debt, a different and inconsistent amount due was provided." Defendant states the debt was misrepresented on "several occasions" but the court "once again" "glossed over these issues when it haphazardly entered summary judgment for [r]espondent."

Defendant does not provide any record cites, documentation, or competent evidence of credited payments that would suggest fraud or misrepresentation regarding the balance owed by AA or plaintiff. Although defendant argues the balance claimed due was incorrect, even if true, such representations during the litigation do not constitute actionable consumer fraud under the CFA.

On appeal, defendant cryptically asserts that plaintiff also violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 to -1692p. Defendant did not advance this claim in his counterclaim or in opposition to summary judgment before the trial court. We therefore decline to address it. See Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012) (explaining

that appellate courts decline to consider questions or issues not properly raised at trial when an opportunity for presentation was available, unless the issues concern matters of public importance); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (same).  In addition, plaintiff did not brief this issue.  "An issue not briefed on appeal is deemed waived."  Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

As to defendant's claim that plaintiff breached the covenant of good faith and fair dealing, he asserts that plaintiff's misleading actions destroyed his right to receive the benefits of the contract which resulted in damages.  Defendant does not elaborate further in his brief.  We deem this inadequately briefed issue waived.  Ibid.  Moreover, when asked about the basis for this claim during his deposition, defendant responded that the bond agreement has $56,000 due but according to "your lawsuit, the amount is quite a bit higher."  When asked what he thought the figure should be, he explained that this event happened close to eleven years ago and he "[doesn't] have great familiarity with these particular contracts.  Which amount [he] believe[s] is wrong, [he doesn't] have significant information to answer that question."  When coupled with his failure to oppose summary judgment, defendant has not demonstrated the existence of material facts in dispute.  A trial court must decide a motion for summary judgment based

upon the factual assertions that were "properly included in the motion" record. Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998).

For these reasons, we conclude that the trial court properly granted summary judgment to plaintiff.

B.

We next address whether the trial court erred by allowing the writ of execution and bank levy to remain in force after the default judgment was vacated. Defendant argues that a vacated judgment cannot be enforced through a writ of execution and bank levy. We agree.

Generally, "[p]rocess to enforce a judgment . . . shall be a writ of execution . . . ." R. 4:59-1(a). Plaintiff "shall serve a copy of the fully endorsed writ, personally or by ordinary mail, on the judgment-debtor after a levy on the debtor's property has been made by sheriff . . . ." Ibid. In addition, the court officer levying on the debtor's property shall, on the day the levy is made, "mail a notice to . . . the person or business entity whose assets are to be levied on stating that a levy has been made and describing exemptions from levy and how such exemptions may be claimed by qualified persons." R. 4:59-1(h). "If the clerk or the court receives a claim of exemption, whether formal or informal, it

12

shall hold a hearing thereon within [seven] days after the claim is made." Ibid. "[N]o further action shall be taken with respect to the levy pending the outcome of the exemption hearing." Ibid.

These procedures protect the asset owner's right to oppose enforcement of void judgments and debts that have been discharged in bankruptcy, and to enforce statutory exemptions from levy. The judgment debtor may oppose the levy if the judgment has been vacated or the writ of execution is void. A writ of execution is void if the underlying judgment is vacated. Borromeo v. DiFlorio, 409 N.J. Super. 124, 141 (App. Div. 2009). "Clearly a void judgment is not entitled to enforcement or execution under [Rule 4:59-1]." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:59-1 (2022) (citing Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200 (App. Div. 1990)).

Here, the default judgment entered against defendant was properly vacated for want of in personam jurisdiction due to lack of service of process. See Berger, 244 N.J. Super. at 205 ("when a court is satisfied . . . that initial service of process was so defective that the judgment is void for want of in personam jurisdiction, the resulting void default judgment must ordinarily be set aside").

The trial court erred by not voiding the writ of execution and levy when the default judgment was vacated. In turn, the turnover of the levied funds to plaintiff's counsel's escrow account was also error. The fact that we uphold the summary judgment subsequently granted to plaintiff does not render those errors moot. A creditor cannot use a writ of execution to enforce a vacated judgment. We reverse the turnover of the levied funds and remand for the trial court to enter an order vacating the levy and directing that the escrowed funds be returned to defendant.

To the extent we have not specifically addressed any of defendant's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2489-19